UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) DONALD PORTER, Derivatively on Behalf of RESOURCES, INC., | ) ) ) | Case No.   CIV-11-890-HE |
| Plaintiff, | ) ) | |
| v. | ) ) ) | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT |
| 1) KEN L. KENWORTHY, JR., 2) MICHAEL J. ROHLEDER, 3) JAMES A. MERRILL, 4) KEN L. KENWORTHY, SR., 5) T. J. BOISMIER, 6) STEVEN CRAIG, and 7) JON W. MCHUGH, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| – and – | ) ) ) | |
| 8) GMX RESOURCES INC., an Oklahoma corporation, | ) ) ) | DEMAND FOR JURY TRIAL |
| Nominal Defendant. | ) ) | |

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a verified shareholder derivative action brought by plaintiff on behalf of nominal defendant GMX Resources Inc. ("GMX" or the "Company") against certain of its officers and directors for breaches of fiduciary duty, waste of corporate assets, and unjust enrichment. These wrongs have decimated GMX's reputation, goodwill, and standing in the

business community. Moreover, defendants' actions have exposed the Company to hundreds of millions of dollars in potential liability for violations of federal law.

2.     GMX is an oil and natural gas exploration and production company. According to its public filings, GMX acquires producing and undeveloped oil and natural gas properties in its core area of East Texas and Louisiana, and engages in drilling oil wells in that area. GMX's singular focus is on drilling for and producing oil and natural gas in its one core area.

3.     From 2004 to 2007, the Company experienced a meteoric rise in growth that saw its sales increase approximately 882% from $7.7 million to $67.9 million, and its net income increase by over 1200% from $1.4 million to $16.9 million. However in 2008, the Company's growth crested to a sudden halt, as it reported a net loss of $81.7 million despite nearly doubling its sales revenue from the previous fiscal year. The Company's stunning fiscal 2008 financial results were largely attributed to a colossal $151.6 million impairment charge GMX recognized during the period that caused its expenses to almost quadruple that of the fiscal 2007. Unbeknownst to the public, GMX's extremely disappointing reported financial results in 2008 still severely understated the Company's financial conditions. The public would soon learn, however, that that the Individual Defendants (as defined herein) hid heavy losses and tens of millions of dollars in impairment charges by causing the Company to report inaccurate financial results that were not in compliance with Generally Accepted Accounting Principles ("GAAP").

4.     While concealing the Company's disastrous financial results in its 2008 and 2009 public filings with the U.S. Securities and Exchange Commission ("SEC"), the

Individual Defendants sought to generate additional capital in order to supplement the Company's suddenly underperforming operations. As such, the Individual Defendants caused the Company to complete two equity offerings without fully and accurately disclosing the Company's financial and business health. GMX issued a total of 12.7 million of GMX's common stock for cumulative gross proceeds of approximately $173 million.

5.     Then, on March 11, 2010, the public learned the truth about the Company when it shockingly announced that it would have to restate its public filings for fiscal years 2008 and 2009. In particular, GMX revealed that the public should no longer rely on the financial information contained in its 2008 Form 10-K, as well as the financial statements included in its interim reports for the first, second, and third quarters of fiscal year 2009 due to certain violations of GAAP. The Company blamed the misstatements in its public filings on inaccurate "pool impairment charges, other impairment charges and related deferred income taxes" that caused the Company to report inaccurate earnings. As a result, GMX's net loss for fiscal year 2008 ballooned from $81.7 million to $126.6 million after the restatement.

6.     At this time, the public also learned that the Individual Defendants assurances that the Company had effective financial controls to fully, fairly, and accurately report the Company's financial health and business prospects were improper. The reality was that the Individual Defendants failed to maintain an effective and adequate system of internal and financial controls to review, monitor, and ultimately prevent the disclosure of the foregoing improper statements. In fact, as acknowledged in its 2009 Form 10-K, GMX stated "that a

material weakness exists in [the Company's] internal control over financial reporting related to the improper application of [GAAP]."

7.     The Individual Defendants' improper statements and failure to implement or maintain an adequate system of financial controls have devastated the Company and tarnished its credibility.  GMX's market capitalization plunged by more than *$1.1 billion, or approximately 80%* from a share price high of $88.35 on July 14, 2008, to the closing price of $9.59 the day after the Company announced the restatements on March 12, 2010.  The Individual Defendants have also exposed the Company to civil liability including a class action filed by investors against the Company and, among others, its Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board"), defendant Ken L. Kenworthy, Jr. ("Kenworthy, Jr."), and its Chief Financial Officer ("CFO"), defendant James A. Merrill ("Merrill"), alleging securities laws violations.

8.     In sum, the Individual Defendants breached their fiduciary duties by issuing, or causing the Company to issue, improper statements concerning the Company's financial results.  In particular, the Individual Defendants made improper statements in the Company's public filings and press releases that inaccurately represented the Company's earnings figures.  These improper statements were a result of the Individual Defendants' failure to implement or maintain an adequate system of internal controls to ensure that the Company's financial statements and accounting policies and procedures were in compliance with GAAP, and ensure that its public disclosures fully, fairly, and accurately conveyed the Company's financial results and business operations to the investing public.  Plaintiff seeks redress for the harm incurred by the Company arising from the Individual Defendants' misconduct.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction in this case over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.    This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) GMX maintains its principal place of business in the District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

12.     Plaintiff Donald Porter is a shareholder of GMX.  Plaintiff was a shareholder at the time of the wrongdoing of which he complains and has continuously been a shareholder. Plaintiff is a citizen of Texas.

**Nominal Defendant**

13.     Nominal defendant GMX is an Oklahoma corporation and an independent oil and natural gas exploration and production company that has historically focused on the development of the Cotton Valley group of formations in East Texas.  GMX operates through three subsidiaries: Diamond Blue Drilling Co., which owns three conventional drilling rigs in the Company's core area; Endeavor Pipeline Inc., which operates GMX's GMXer supply and salt GMXer disposal systems in the Company's core area; and Endeavor Gathering LLC, which owns the natural gas gathering system and related equipment operated by Endeavor Pipeline Inc.  GMX's principal executive offices are located at One Benham Place, 9400 North Broadway, Suite 600, Oklahoma City, Oklahoma.

**Individual Defendants**

14.     Defendant Kenworthy, Jr. is GMX's CEO, Chairman of the Board, and a director and has been since 1998.  Kenworthy, Jr. was also GMX's President from 1998 to June 2009. Kenworthy, Jr. co-founded GMX with his father, defendant Ken L. Kenworthy, Sr. ("Kenworthy, Sr.").  Kenworthy, Jr. knowingly, recklessly, or with gross negligence: (i) made improper statements regarding the Company's financial results and its internal controls; and (ii) failed to implement an effective system of internal and financial controls to ensure

the Company's accounting policies and procedures were in compliance with GAAP, and that its public disclosures fully, fairly, and accurately represented the Company's financial results and business operations. Kenworthy, Jr. is also named as a defendant in a securities class action complaint that alleges he violated sections 11 and 15 of the Securities Act of 1933. Kenworthy, Jr. is a citizen of Oklahoma.

15.     Defendant Michael J. Rohleder ("Rohleder") is GMX's President and has been since June 2009 and a director and has been since April 2011. Rohleder was also GMX's Executive Vice President, Corporate Development and Investor Relations from March 2008 to June 2009. Rohleder knowingly, recklessly, or with gross negligence: (i) authorized the improper statements regarding the Company's financial results and its internal controls; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's accounting policies and procedures were in compliance with GAAP, and that its public disclosures fully, fairly, and accurately represented the Company's financial results and business operations. Rohleder is a citizen of Oklahoma.

16.     Defendant Merrill is GMX's CFO, Secretary, and Treasurer and has been since February 2008. Merrill was also GMX's Controller from the August 2006 to February 2008. Merrill knowingly, recklessly, or with gross negligence: (i) made improper statements regarding the Company's financial results and its internal controls; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's accounting policies and procedures were in compliance with GAAP, and that its public disclosures fully, fairly, and accurately represented the Company's financial results and business operations. Merrill is named as a defendant in a securities class action complaint

that alleges he violated sections 11 and 15 of the Securities Act of 1933. Merrill is a citizen of Oklahoma.

17.     Defendant Kenworthy, Sr. is a GMX director and has been since 1998. Kenworthy, Sr. was also GMX's Executive Vice President and CFO 1998 to February 2008. Kenworthy, Sr. co-founded GMX with his son, defendant Kenworthy, Jr. Kenworthy, Sr. knowingly or recklessly: (i) made improper statements regarding the Company's financial results and its internal controls; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's accounting policies and procedures were in compliance with GAAP, and that its public disclosures fully, fairly, and accurately represented the Company's financial results and business operations. GMX paid Kenworthy, Sr. the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|------|-------------------|--------------|---------------|------------------------|-------|
| 2010 | $88,970 | $54,056 | $6,099 | $146,621 | $295,746 |
| 2009 | $84,000 | $187,498 | - | $19,850 | $291,348 |

Kenworthy, Sr. is a citizen of Oklahoma.

18.     Defendant T. J. Boismier ("Boismier") is a GMX director and has been since February 2001. Boismier was also a member of GMX's Audit Committee from at least 2007 to the second quarter of calendar year 2010. Boismier knowingly or recklessly: (i) made improper statements regarding the Company's financial results and its internal controls; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's accounting policies and procedures were in compliance with GAAP, and that its public disclosures fully, fairly, and accurately represented the Company's financial results and business operations. GMX paid Boismier the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|------|------|------|------|------|------|
| 2010 | $95,870 | $54,056 | $6,099 | $97,891 | $253,916 |
| 2009 | $86,500 | $187,498 | - | $13,032 | $287,030 |
| 2008 | $56,000 | $31,250 | $53,789 | - | $141,039 |

Boismier is a citizen of Oklahoma.

19.   Defendant Steven Craig ("Craig") is a GMX director and has been since August 2001. Craig was also a member of GMX's Audit Committee from at least 2007 to the second quarter of calendar year 2010. Craig knowingly or recklessly: (i) made improper statements regarding the Company's financial results and its internal controls; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's accounting policies and procedures were in compliance with GAAP, and that its public disclosures fully, fairly, and accurately represented the Company's financial results and business operations. GMX paid Craig the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|------|------|------|------|------|------|
| 2010 | $98,970 | $54,056 | $6,099 | $97,891 | $257,016 |
| 2009 | $90,400 | $187,498 | - | - | $277,898 |
| 2008 | $57,400 | $31,250 | $53,789 | - | $142,439 |

Craig is a citizen of Oklahoma.

20.   Defendant Jon W. McHugh ("McHugh") is a GMX director and has been since January 2005. McHugh is also a member of GMX's Audit Committee and has been since at least 2007. McHugh knowingly or recklessly: (i) made improper statements regarding the Company's financial results and its internal controls; and (ii) failed to implement an effective system of internal and financial controls to ensure the Company's accounting policies and

procedures were in compliance with GAAP, and that its public disclosures fully, fairly, and accurately represented the Company's financial results and business operations. GMX paid McHugh the following compensation as a director:

| Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2010 | $115,970 | $54,056 | $6,099 | $106,391 | $282,516 |
| 2009 | $106,000 | $187,498 | - | - | $293,498 |
| 2008 | $60,500 | $31,250 | $51,701 | - | $143,451 |

McHugh is a citizen of Oklahoma.

21.     The defendants identified in ¶¶14-16 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶14-15, 17-20 are referred to herein as the "Director Defendants." The defendants identified in ¶¶18-20 are referred to herein as the "Audit Committee Defendants." Collectively, the defendants identified in ¶¶14-20 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

### Fiduciary Duties

22.     By reason of their positions as officers, directors, and/or fiduciaries of GMX and because of their ability to control the business and corporate affairs of GMX, the Individual Defendants owed and owe GMX and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care and were and are required to use their utmost ability to control and manage GMX in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of GMX and its

shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

23.     Each officer and director of the Company owes to GMX and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

**Code of Business Conduct**

24.     Since 2004, the Company had in place its Code of Business Conduct (the "Code") which applies to all employees including "the Company's principal executive, financial and accounting officers." The Code is designed to "establish the basic principles by which the Company and its employees will conduct business in an honest and ethical manner."  In particular, the Code requires its directors and officers to ensure that the Company's public disclosures including its SEC filings and earnings press releases are "full, fair, accurate, timely and understandable."  The Code specifically provides that the obligation to ensure the integrity of the Company's financial disclosures applies to "all financial and operating executives, with any responsibility or the preparation of such reports, including drafting, reviewing, and signing or certifying the information contained therein." Further, the Code warrants that the Company's accounting records and reports "[should] be

kept and presented accurately and completely and in accordance with [GAAP]."

**Audit Committee Duties**

25.     In addition to these duties, under GMX's Board's Audit Committee Charter in effect since at least 2005, defendants Boismier, Craig, and McHugh, as members of the Audit Committee, owe specific duties to the Company.  According to the Audit Committee Charter, these defendants are responsible for overseeing the Company's "accounting and financial reporting processes."  In particular, the Audit Committee Defendants must assist the Board in "monitoring ... the integrity of the financial statements of the Company," reviewing the "performance of the Company's independent registered public accounting firm," and ensuring "compliance by the Company with legal and regulatory requirements."  In addition, the Audit Committee Defendants have a duty to review and discuss with management and the independent auditor "significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including any significant changes in the Company's selection or application of accounting principles," and "any major issues as to the adequacy of the Company's internal controls."  Further, these Audit Committee Defendants have a duty and responsibility to discuss with management the Company's earnings press releases, and "[r]eview the certifications of the Company's [CEO] and [CFO] (when required by applicable SEC rules) for the Form 10-K and Form 10-Q about any significant deficiencies in the design or operation of the internal controls or material weaknesses therein."  The Audit Committee met five times in 2008 and ten times in 2009.

**Control, Access, and Authority**

26.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of GMX, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

27.    Because of their advisory, executive, managerial, and directorial positions with GMX, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and growth prospects of GMX.

28.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of GMX, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

29.    To discharge their duties, the officers and directors of GMX were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of GMX were required to, among other things:

(a)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial health;

(b)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     remain informed as to how GMX conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**Breaches of Duties**

30.     Each Individual Defendant, by virtue of his position as an officer and/or director, owed to the Company and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of GMX, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of GMX's Board.

31.    Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to issue improper statements regarding its financial results, and failing to implement or maintain adequate financial controls to ensure compliance with GAAP and prevent the dissemination of the foregoing improper statements.    Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct, the Company is now the subject of a class action lawsuit that alleges violations of the federal securities laws.  As a result, GMX has expended, and will continue to expend, significant sums of money.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

32.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.   In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

33.    During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including shareholders of GMX, regarding the Company's financial results and internal controls; (ii) allowed the Company to operate without an adequate system of internal controls to ensure compliance with GAAP and proper financial disclosures; and (iii) enhance the Individual Defendants' executive and directorial positions at GMX and the

profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

34.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

35.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements and allow the Company to operate with adequate internal or financial controls. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

36.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

## IMPROPER STATEMENTS

37.    The Individual Defendants made improper statements regarding GMX's financial results that misrepresented the Company's earnings, including its diluted loss per share and impairment figures.

38.    The improper statements started on February 26, 2009, when GMX issued a press release announcing the Company's financial result for both the fourth quarter and the 2008 fiscal year ended December 31, 2008. For the fiscal 2008 year, the Company reported a net loss of $81.7 million which included an impairment charge of $151.6 million, a diluted loss per share of $5.66.

39.    On March 2, 2009, the Company filed its 2008 Form 10-K. In the 10-K, defendants Kenworthy, Jr., Merrill, Boismier, Craig, Kenworthy, Sr. and McHugh reiterated the Company's loss and diluted loss per share figure. Further, defendants Kenworthy, Jr., Merrill, Boismier, Craig, Kenworthy, Sr. and McHugh acknowledged that the Company's failure to "achieve and maintain effective internal control over financial reporting," and findings of "material weakness[es] may cause investors to lose confidence in [the Company's] consolidated financial statements," and therein GMX's "stock price may be adversely affected as a result." These defendants also provided in the Form 10-K that defendants Kenworthy, Jr. and Merrill had "concluded that [the Company's] internal control over financial reporting was effective as of December 31, 2008."

40.    On May 7, 2009, GMX issued a press release announcing the Company's financial result for the fiscal 2009 first quarter ended March 31, 2009. The Company reported a net loss of $124.4 million and a diluted loss per share of $8.15.

41.    On May 8, 2009, the Company filed its first quarter 2009 Form 10-Q.  In the 10-Q, defendants Kenworthy, Jr. and Merrill reiterated the Company's losses and diluted loss per share figure reported in the press release. Further, defendants Kenworthy, Jr. and Merrill warranted that the Company's "current disclosure controls and procedures [were] effective."

42.    On May 14, 2009, GMX filed its prospectus supplement to its existing prospectus on file with the SEC on June 25, 2008, to commence a public equity offering of five million shares of the Company's common stock at $12 per share for gross proceeds of $69 million.  These shares were registered pursuant to the Company's registration statement signed by defendants Kenworthy, Jr., Merrill, Boismier, Craig, Kenworthy, Sr., and McHugh.  The prospectus supplement included a summary of the Company's financial results for the fiscal year 2008, and for the first quarter of fiscal year 2009.  As such, the prospectus supplement reported the Company's net loss, impairment, and diluted loss per share figures reported in the Company's Annual Report for fiscal year 2008 and Interim Report for the first quarter of fiscal 2009.   In the prospectus supplement, defendants Kenworthy, Jr., Merrill, Boismier, Craig, Kenworthy, Sr., and McHugh, maintained that they had evaluated the Company's internal controls system over financial reporting, and that they "[had] not identified control deficiencies under applicable SEC and Public Company Accounting Oversight rules and regulations that remain unremediated."

43.    On August 3, 2009, the Company issued a press release announcing its financial results for the fiscal 2009 second quarter ended June 30, 2009.  The Company reported a net loss of $8.2 million and a diluted loss per share of $0.51.

44.     On August 7, 2009, the Company filed its second quarter 2009 Form 10-Q. In the 10-Q, defendants Kenworthy, Jr. and Merrill reiterated the Company's losses and diluted loss per share figure reported in the press release. Further, defendants Kenworthy, Jr. and Merrill disclosed that based on their review and evaluation, they "concluded that [the Company's] current disclosure controls and procedures [were] effective."

45.     On October 26, 2009, GMX filed its prospectus supplement to its existing prospectus on file with the SEC on June 25, 2008, to commence a public equity offering of 6.95 million shares of the Company's common stock at $15 per share for gross proceeds of approximately $104.3 million.  These shares were registered pursuant to the Company's registration statement signed by defendants Kenworthy, Jr., Merrill, Boismier, Craig, Kenworthy, Sr., and McHugh.  The prospectus supplement included a summary of the Company's financial results for the fiscal year 2008, and for the first and second quarters of fiscal year 2009.  As such, the prospectus supplement reported the Company's net loss, impairment, and diluted loss per share figures reported in the Company's Annual Report for fiscal year 2008 and Interim Report for the first and second quarter of fiscal 2009.  In the prospectus supplement, defendants Kenworthy, Jr., Merrill, Boismier, Craig, Kenworthy, Sr., and McHugh, maintained that they had evaluated the Company's internal controls system over financial reporting, and that they "[had] not identified control deficiencies under applicable SEC and Public Company Accounting Oversight Board rules and regulations that remain unremediated."

46.    On November 6, 2009, the Company issued a press release announcing its financial results for the fiscal 2009 third quarter ended September 30, 2009. The Company reported a net loss of $2.8 million and a diluted loss per share of $0.19.

47.    On November 9, 2009, the Company filed its third quarter 2009 Form 10-Q. In the 10-Q, defendants Kenworthy, Jr. and Merrill reiterated the Company's losses and diluted loss per share figure reported in the press release. Further, defendants Kenworthy, Jr. and Merrill disclosed that based on their review and evaluation, they "concluded that [the Company's] current disclosure controls and procedures [were] effective.

48.    The above statements made or authorized by the Individual Defendants were improper because: (i) they misrepresented the Company's earnings, including the Company's impairment charges and diluted loss per shares figures; and (ii) they falsely represented that the Company had adequate and effective systems of internal and/or financial controls to fully, fairly, and accurately report the Company's financial condition and growth prospects.

## THE TRUTH IS REVEALED

49.    On March 11, 2010, the Company issued a press release announcing its restatement of its earnings results for fiscal year 2008 and for the first three quarters of fiscal year 2009. According to the press release, GMX incorrectly recorded its previous "full cost pool impairment charges, other impairment charges and related deferred income taxes." Further, the Company disclosed errors in its previously reported GAAP diluted loss per share figures that improperly included dilutive securities in its calculation. As a result, the Company stated that its financial statements for fiscal year 2008 and the first three quarters

of fiscal 2009 should "no longer be relied upon," and disclosed that it restated net loss for fiscal year 2008 increased from $81.7 million to $124.6 million.

50.     The next day, the Company filed a Form 8-K that provided further details concerning GMX's surprising restatement. GMX attributed the impairment charge errors to "a failure to account for the effects of deferred income taxes or deferred income tax benefits on the impairment charges." Further, the Company stated that it "incorrectly recorded a lower of cost or market inventory valuation charge on certain long-lived assets of approximately $3 million in each of the first and second quarters of 2009." GMX also provided further detail as to its failure to properly account for its diluted loss per share figures for fiscal year 2008 and the first three quarters of fiscal year 2009. The Company admitted that it improperly "applied the dilutive effect of additional shares issuable pursuant to convertible securities, unvested restricted stock awards and stock options in calculating diluted loss per share," when they should have been excluded because they were not dilutive of the basic loss per share amounts.

51.     On March 16, 2010, the Company filed its 2009 Form 10-K. In the 10-K, defendants Kenworthy, Jr., Merrill, Boismier, Craig, Kenworthy, Sr., and McHugh set forth all of the adjustments pursuant to the Company's restatement of its financial results. More importantly, the Form 10-K revealed the Company's utter lack of internal and financial controls over its financial reporting. The Form 10-K provided that management "identified a material weakness in [GMX's] internal control over financial reporting due to management's improper application of [GAAP] resulting in corrections to [the Company's] previously reported December 31, 2008 consolidated financial statements and the first three quarters of

2009." Worse, GMX admitted that "Management failed to timely detect and correct errors relating to the improper application of [GAAP] in determining [the Company's] full cost pool impairment charges, other impairment charges, and related deferred income taxes ... [and] also failed to timely detect and correct errors as a result of improperly including dilutive securities in [the Company's] computation of diluted loss per share." Accordingly, the management and the Audit Committee resolved that a restatement of GMX's financial statements was appropriate, and "that a material weakness exists in [the Company's] internal control over financial reporting related to the improper application of [GAAP]."

## DAMAGES TO GMX

52.     As a result of the Individual Defendants' improprieties, the Company has incurred and will incur significant costs and expenditures.  The Individual Defendants' fraudulent conduct and improper statements have devastated GMX's credibility as reflected by the Company's over $1.1 billion market capitalization decline once the truth was revealed.

53.     GMX also faces damages from a securities class action brought by investors against it.  The complaint in the above action alleges false and misleading statements made by these defendants concerning the Company's financial results and business operations. In particular, the complaint alleges that the Company made untrue statements in its offering materials for its equity offerings as to the Company's financial results and lack of adequate internal controls.  Accordingly, the Company has and will incur costs in investigating and defending GMX and certain officers and directors in the lawsuit, in addition to potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment.

54.     Further, as a direct and proximate result of the Individual Defendants' actions, GMX has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred in its re-audit and restatement of its financial statements for fiscal year 2008 and the first three quarters of fiscal year 2009; and

(b)     costs incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to GMX.

55.     Moreover, these actions have irreparably damaged GMX's corporate image and goodwill.  For at least the foreseeable future, GMX will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in improper behavior and have misled the investing public, such that GMX's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

56.     Plaintiff brings this action derivatively in the right and for the benefit of GMX to redress injuries suffered, and to be suffered, by GMX as a direct result of breach of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  GMX is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

57.     Plaintiff will adequately and fairly represent the interests of GMX in enforcing and prosecuting its rights.

58.    Plaintiff is a shareholder of GMX.   Plaintiff was a shareholder at the time of the wrong doing of which he complains and has continuously been a shareholder.

59.    The current Board of GMX consists of the following nine individuals: Kenworthy, Jr., Rohleder, Kenworthy, Sr., Boismier, Craig, McHugh, Michael G. Cook, Thomas G. Casso, and J. David Lucke.   Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act as set forth below.

**Demand Is Excused Because Defendants Kenworthy, Jr., Rohleder, Kenworthy, Sr., Boismier, Craig, and McHugh Face a Substantial Likelihood of Liability for Their Misconduct**

60.    Defendant Kenworthy, Jr., as Chairman and CEO, was ultimately responsible for the Company's operations, financial statements, and internal controls.   However, in complete abdication of his fiduciary duties, Kenworthy, Jr. caused or allowed the Company to implement accounting procedures and policies in non-compliance with GAAP.   As a result, Kenworthy, Jr. knowingly, recklessly, or with gross negligence caused the Company to misrepresent its financial results by making improper statements in the Company's public filings, press releases, and certain offering materials as to GMX's earnings, impairment charges, and diluted loss per share figures.   Kenworthy, Jr., the principal executive officer, was responsible for reviewing and evaluating "the effectiveness of [GMX's] disclosure controls and procedures," as explicitly provided in the Company's 2008 Annual Report and the interim reports for fiscal year 2009.   Yet, as acknowledged by the Company in its 2009 Form 10-K, Kenworthy, Jr. failed to implement or maintain an adequate system of internal or financial controls to ensure the Company's accounting policies were in accord with applicable accounting regulations and standards.   Kenworthy, Jr.'s misconduct was especially egregious because he expressly warranted that in the foregoing annual and interim reports

that GMX's disclosure controls and procedures were effective.  Further, while making improper statements that concealed the full extent of the Company's losses during the restatement period, Kenworthy, Jr. caused GMX to initiate equity offerings of over twelve million shares of the Company's stock unknowing investors.  As such, Kenworthy, Jr. oversaw the Company's continuous and systematic improper disclosures which have tarnished GMX's credibility, decimated the Company's market capitalization, and exposed the Company to legal liability.  Accordingly, Kenworthy, Jr. breached his fiduciary duties to the Company and faces a substantial likelihood of liability.  Demand upon him is futile.

61.    Defendant Rohleder breached his fiduciary duty of care and loyalty by knowingly, recklessly, or with gross negligence authorizing the improper statements concerning GMX's financial conditions and internal controls.  As GMX's President during the misconduct alleged herein, Rohleder had a duty and responsibility to exercise due care in managing the Company's operations.  However, Rohleder knowingly, recklessly, or with gross negligence caused the Company to adopt improper accounting procedures and policies that were not in compliance with GAAP, and, therein, resulted in the dissemination of improper statements that effectively mislead the public as to the extent of the losses incurred by the Company.  Further, Rohleder authorized GMX to issue improper statements stating the Company had an effective system of internal and financial controls, when in fact, as disclosed in its 2009 Form 10-K, the Company had material weakness in its disclosure controls that rendered its financial accounting practices in non-compliance with GAAP.  Finally, Rohleder knowingly, recklessly, or with gross negligence allowed the Company to operate without proper internal controls to ensure compliance with GAAP, and to ensure that

its public disclosures fully, fairly, and accurately represented the Company's financial health. As such, Rohleder breached his fiduciary duties to the Company and faces a substantial likelihood of liability. Demand upon him is futile.

62.     Defendants Kenworthy, Sr., Boismier, Craig, and McHugh breached their fiduciary duties of loyalty by knowingly or extremely recklessly making and allowing the improper statements in the Company's press releases and SEC filings regarding the Company's financial results and business operations. In particular, these defendants made improper statements that: (i) failed to disclose GMX's non-compliance with its revenue recognition policies and GAAP provisions; (ii) reported inaccurate earnings, impairment charges, and diluted per share figures; and (iii) failed to disclose that the Company lacked adequate internal or financial controls. These improper statements concealed the true nature of the Company's business operations and financial results and allowed the Company to consummate equity offerings worth a total of approximately $173 million to unsuspecting investors. Further, Kenworthy, Sr., Boismier, Craig, and McHugh breached their fiduciary duties by failing to implement or maintain an adequate system of internal controls to ensure compliance with GAAP, and to ensure that its public disclosures fully, fairly, and accurately represented the Company's financial health. These defendants' failure to ensure proper accounting and disclosure controls were in place have compromised GMX's credibility, resulted in a staggering market capitalization drop of approximately $1.1 billion, and have exposed the Company to legal liability including a securities class action. Accordingly, Kenworthy, Sr., Boismier, Craig, and McHugh cannot impartially consider a demand to

initiate litigation because they face a substantial likelihood of liability. Demand upon Kenworthy, Sr., Boismier, Craig, and McHugh is futile.

63.     Defendants Boismier, Craig, and McHugh, as members of the Audit Committee, had additional and heightened responsibilities to oversee the "accounting and financial reporting processes," and review and discuss with management and the independent auditor "significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including any significant changes in the Company's selection or application of accounting principles," and "any major issues as to the adequacy of the Company's internal controls." In particular, Boismier, Craig, and McHugh had a fiduciary duty and responsibility to "[r]eview certifications of the Company's [CEO] and [CFO] (when required by applicable SEC rules) for the Form 10-K and Form 10-Q about any significant deficiencies in the design or operation of the internal controls or material weaknesses therein." Boismier, Craig, and McHugh failed miserably. As alleged herein, Boismier, Craig, and McHugh knowingly or recklessly made and allowed the Company to make improper statements related to GMX's financial results and business operations, including its earnings, impairment charges, and diluted loss per share figures. Further, in reckless disregard of their oversight duties as Audit Committee members, Boismier, Craig, and McHugh allowed the Company to implement accounting procedures that were non-conforming with GAAP, and failed to implement or maintain adequate internal controls to ensure GMX's compliance with applicable accounting and disclosure standards. Indeed, these Audit Committee Defendants acknowledged the glaring issues concerning the Company's internal controls deficiencies, stating in the 2009 Form 10-K "that a material

weakness exists in [the Company's] internal control over financial reporting related to the improper application of [GAAP]." Accordingly, Boismier, Craig, and McHugh face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

64.    Defendants Kenworthy, Jr., Kenworthy, Sr., Boismier, Craig, and McHugh, as members of the Board, were and are subject to the Code. The Code went well beyond the basic fiduciary duties required by applicable laws, rules, and regulations. The Code required, among other things, that Kenworthy, Jr., Kenworthy, Sr., Boismier, Craig, and McHugh, promote "full, fair, accurate, timely and understandable" disclosures in "all periodic reports and documents filed with, or submitted to, the [SEC], and other public communications and filings by the Company." Further, under the Code, Kenworthy, Jr., Kenworthy, Sr., Boismier, Craig, and McHugh were required to ensure that that the Company's accounting records and reports were "kept and presented accurately and completely and in accordance with [GAAP]." This they did not do. As stated herein, Kenworthy, Jr., Kenworthy, Sr., Boismier, Craig, and McHugh violated the Code by making and allowing the Company to make improper financial disclosures in its public filings, press releases, and offering materials. Further, these defendants failed to ensure its accounting practices and procedures were in accordance with GAAP, by failing to implement or maintain proper internal or financial controls. Because Kenworthy, Jr., Kenworthy, Sr., Boismier, Craig, and McHugh violated the Code, they face a substantial likelihood of liability for breaching their fiduciary duties, thereby demand upon them is futile.

65.     Defendants Kenworthy, Sr. and Kenworthy, Jr. are father and son, and share a close relationship that saw them co-found GMX together in 1998. Because of their familial and substantial business relationships, neither father nor son will take action against the other. Since 1998, both father and son have been members of the Board, and up until 2008, both defendants served as part of the Company's management. Admittedly, the Company does not list defendant Kenworthy, Sr. and Kenworthy, Jr. as independent directors under the New York Stock Exchange standards in its public filings. Kenworthy, Sr. and Kenworthy, Jr.'s close familial relationship, standing alone, creates a disabling interest which prevents them from giving disinterested consideration to a demand. Accordingly, any demand upon these defendants is futile.

66.     Moreover, the acts complained of constitute violations of the fiduciary duties owed by GMX's officers and directors and these acts are incapable of ratification.

67.     GMX has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for GMX any part of the damages GMX suffered and will suffer thereby.

68.     If GMX's current and past officers and directors are protected against personal liability for their acts of mismanagement and breach of fiduciary duty alleged in this Complaint by directors and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, i.e., monies belonging to the stockholders of GMX. However, the directors' and officers' liability insurance policies

covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by GMX against these defendants, known as the "insured versus insured exclusion." As a result, if these directors were to cause GMX to sue themselves or certain of the officers of GMX, there would be no directors and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors and officers' liability insurance, then the current directors will not cause GMX to sue the Individual Defendants named herein, since they will face a large uninsured liability and lose the ability to recover for the Company from the insurance.

69.     Plaintiff has not made any demand on the other shareholders of the Company to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     the Company is a publicly held company with over 59 million shares outstanding and thousands of shareholders;

(b)     making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

(c)     making demand on all shareholders would force plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     The Individual Defendants owed and owe GMX fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe GMX the highest obligation of good faith, fair dealing, loyalty, and due care.

72.     The Director Defendants of the Company owed GMX the highest duty of loyalty and due care. These defendants breached their duty of loyalty by knowingly or recklessly making, and allowing the Company to make, improper statements concerning: (i) its earnings, impairment charges, and diluted loss per share figures; (ii) GMX's compliance with GAAP provisions; and (iii) the Company's internal and financial controls to ensure compliance with GAAP, and that its public disclosures fully, fairly, and accurately reflected the Company's financial health. The Director Defendants further breached their fiduciary duties by failing to ensure that an adequate system of internal and financial controls was in place to prevent the dissemination of improper public disclosures and ensure compliance with GAAP, and other applicable accounting policies and procedures. As demonstrated by the litany of improper statements alleged herein, the Company did not have in place, and/or failed to properly implement, an effective system of internal and financial controls. In fact, the Director Defendants knowingly or recklessly concealed the Company's adverse earnings results and exploited the investing public's lack of information to execute two equity offerings for a combined twelve million shares of the Company's stock for gross proceeds of

approximately $173 million.  In doing so, these defendants disregarded any such internal controls in directly issuing improper statements in the Company's public filings or press releases regarding the Company's financial results, its purported compliance with GAAP, and the Company's allegedly effective internal controls.  Accordingly, the Director Defendants breached their fiduciary duties in making or allowing the improper statements alleged herein, and failing to implement proper internal or financial controls.

73.    The Officer Defendants of the Company owed GMX the highest duty of loyalty and due care.  The Officer Defendants breached their duty of loyalty and due care by knowingly, recklessly, or with gross negligence making or allowing the Company to make improper statements concerning: (i) its earnings, impairment charges, and diluted loss per share figures; (ii) GMX's compliance with GAAP provisions; and (iii) the Company's internal and financial controls to ensure compliance with GAAP, and that its public disclosures fully, fairly, and accurately reflected the Company's financial health.  These defendants also knowingly, recklessly, or with grossly negligence caused GMX to adopt accounting procedures and policies that were not in compliance with GAAP.  Worse, the Officer Defendants warranted that the Company had effective disclosure controls in its public filings despite failing to ensure that an adequate system of internal and financial controls was in place to prevent the dissemination of improper public disclosures and ensure compliance with GAAP, and other applicable accounting policies and procedures.  While concealing the true extent of the Company's losses to public, the Officer Defendants caused the Company to publicly issue a combined twelve million shares of the Company's stock for gross proceeds of approximately $173 million.  Accordingly, the Officer Defendants

breached their fiduciary duties in making or allowing the improper statements alleged herein, and failing to implement proper internal or financial controls.

74.    Defendants Boismier, Craig, and McHugh breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee. These defendants were responsible for reviewing and overseeing the Company's compliance with GAAP and ensuring the integrity of its financial statements. In a complete and utter abdication of their heightened duties under the Audit Committee Charter, Boismier, Craig, and McHugh knowingly or recklessly allowed the Company to issue improper statements regarding the Company's financial results and business operations. Further, Boismier, Craig, and McHugh breached their fiduciary duties under the Audit Committee Charter by knowingly or recklessly failing to implement or maintain an adequate system of internal or financial controls to ensure the Company's accounting procedures were in compliance with GAAP, and that its public disclosures fully, fairly, and accurately reflected the Company's financial health.

75.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, GMX has sustained significant damages, as alleged herein. As a result of the misconduct alleged herein, these defendants are liable to the Company.

76.    Plaintiff, on behalf of GMX, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

77.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.   As a result of the extensive deficiencies in the Company's accounting procedures, the various improper statements that misrepresented the Company's earnings and other financial metrics, and by failing to conduct proper supervision and implement or maintain proper internal controls, the Individual Defendants have caused GMX to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

79.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

80.   Plaintiff, on behalf of GMX, has no adequate remedy at law.

COUNT III

**Against the Individual Defendants for Unjust Enrichment**

81.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of GMX. The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to GMX.

83.   Plaintiff, as a shareholder and representative of GMX, seeks restitution from the Individual Defendants, and each of them, and seeks an order of this Court disgorging all

profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

84.   Plaintiff, on behalf of GMX, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of GMX, demands judgment as follows:

A.   Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breach of fiduciary duty, waste of corporate assets, and unjust enrichment;

B.   Directing GMX to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect GMX and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following Corporate Governance Policies:

(i)   a proposal to strengthen the Company's controls over financial reporting;

(ii)   a proposal to strengthen GMX's oversight of its auditing, accounting, and disclosure procedures;

(iii)    a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

(iv)    a provision to permit the shareholders of GMX to nominate at least three candidates for election to the Board;

C.    Extraordinary equitable and/or injunctive relief as permitted by law and equity, sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to assure that plaintiff on behalf of GMX has an effective remedy;

D.    Awarding to GMX restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated:    August 4. 2011.

Respectfully submitted,

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY

DARREN B. DERRYBERRY
4800 North Lincoln Boulevard
Oklahoma City, OK 73105
Telephone: (405) 708-6784
Facsimile: (405) 528-6462

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
KEVIN A. SEELY
ASHLEY R. PALMER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

GOLDFARB BRANHAM LLP
HAMILTON LINDLEY
Saint Ann Court
2501 N. Harwood Street, Suite 1801
Dallas, TX 75201
Telephone: (214) 583-2257
Facsimile: (214) 583-2234

Attorneys for Plaintiff

618090

## VERIFICATION

I, Donald Porter, hereby declare as follows:

I am the plaintiff in the within entitled action.  I have read the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment.  Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated:  _7-22-11_

DONALD PORTER