# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DONALD PORTER, Derivatively and On  )
Behalf of GMX Resources, Inc.,            )
                               )
     Plaintiff,                                )
                               )
vs.                                              )
                               )
1) KEN L. KENWORTHY, JR.,            )
2) MICHAEL J. ROHLEDER,             )
3) JAMES A. MERRILL,                    )
4) KEN L. KENWORTHY, SR.,            )          Case 5:11-cv-890-D
5) T.J. BOISMIER,                           )
6) STEVEN CRAIG, and                   )
7) JON W. MCHUGH,

     Defendants.

8) GMX RESOURCES INC.,

     Nominal Defendant.

---

## MOTION TO DISMISS OR, ALTERNATIVELY, STAY AND BRIEF IN SUPPORT

---

KENNETH P. HELD (admitted *pro hac vice*)
RONALD L. ORAN (admitted *pro hac vice*)
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Telephone:  (713) 758-2222
Facsimile:  (713) 615-5219
kheld@velaw.com; roran@velaw.com

MACK J. MORGAN, III, OBA #6397
CROWE & DUNLEVY
A Professional Corporation
20 North Broadway Ave., Suite 1800
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
mack.morgan@crowedunlevy.com

**ATTORNEYS FOR DEFENDANTS KEN L. KENWORTHY, JR., MICHAEL J. ROHLEDER, JAMES A. MERRILL, KEN L. KENWORTHY, SR., T.J. BOISMIER, STEVEN CRAIG, and JON W. MCHUGH**

October 17, 2011

INTRODUCTION ........................................................................................................1

FACTS AND PROCEDURAL HISTORY ..................................................................4

1.      GMX'S MARCH 2010 ACCOUNTING RESTATEMENT.................................5

2.      THE SECTION 11 SECURITIES LAWSUIT. ....................................................7

3.      PLAINTIFF'S TAG-ALONG DERIVATIVE LAWSUIT. .................................8

4.      GMX'S BOARD OF DIRECTORS. ...................................................................8

ARGUMENT .............................................................................................................9

1.      PLAINTIFF LACKS STANDING TO SUE ON BEHALF OF THE COMPANY
        BECAUSE HE FAILED TO MAKE PARTICULARIZED ALLEGATIONS
        DEMONSTRATING THAT DEMAND IS EXCUSED UNDER RULE 23.1.................9

        a.      A Heightened Pleading Standard Applies to Plaintiff's Demand Futility
                Claims. .................................................................................................9

        b.      GMX's Board Is Sufficiently Disinterested to Determine Whether to Assert
                the Alleged Claims...............................................................................12

                i .     Plaintiff Cannot Plead a Claim for Breach of the Duty of Care Because
                        GMX's Articles of Incorporation Waive Such Claims.............................14

                ii .    Plaintiff Has Not Pled a Breach of the Duty of Loyalty. ...........................16

                iii .   Plaintiff Has Not Pled a Claim for Unjust Enrichment.............................18

        c.      GMX's Board Is Sufficiently Independent to Determine Whether to Assert the
                Alleged Claims......................................................................................19

2.      THIS LAWSUIT IS PREMATURE AND SHOULD BE STAYED. .............................20

        a.      This Lawsuit Is Premature and Could Prove Unnecessary...................................21

        b.      Staying This Lawsuit Avoids Potential Harm to the Company............................23

        c.      Staying This Lawsuit Will Not Prejudice the Company or Plaintiff. ....................25

CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*American Life Ins. Co. v. Stewart*,
    300 U.S. 203 (1937)........................................................................................23

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ...............................................................................19

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)....................................................................................10

*Beard v. Love*,
    173 P.3d 796 (Oklahoma Civ. App. 2007) ....................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................10

*Braddock v. Zimmerman*,
    906 A.2d 776 (Del. 2006) ...............................................................................12

*Breault v. Folino*,
    2002 WL 31974381 (C.D. Cal. Mar. 15, 2002)............................................21

*Brudno v. Wise*,
    2003 WL 1874750 (Del. Ch. Apr. 1, 2003)...........................................22, 25

*Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv., Inc.*,
    1996 WL 506906  (Del. Ch. Sept. 3, 1996)...................................................14

*Cinerama, Inc. v. Technicolor, Inc.*,
    663 A.2d 1156 (Del. 1995) .............................................................................12

*Continuing Creditors' Comm. of Star Telecom., Inc. v. Edgecomb*,
    385 F. Supp. 2d 449 (D. Del. 2004)...............................................................15

*Cucci v. Edwards*,
    2007 WL 3396234 (CD. Cal. Oct. 31, 2007).................................................24

*Derdiger v. Tallman*,
    773 A.2d 1005 (Del. Ch. 2000) .....................................................................21

*Emerald Partners v. Berlin*,
    787 A.2d 85 (Del. 2001) .................................................................................16

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003) .......................................................................13

*Hargrave v. Canadian Valley Elec. Co-op, Inc.*,
    792 P.2d 50 (1990)..........................................................................................11

*In re E.F. Hutton Banking Practices Litig.*,
    634 F. Supp. 265 (S.D.N.Y. 1986) .................................................................24

*In re General Motors (Hughes) S'holder Litig.*,
   2005 WL 1089021 (Del. Ch. May 4, 2005) ...................................................... 13

*In re Isolagen, Inc. Sec. & Deriv. Litig.*,
   2007 WL 1101278 (E.D. Pa. Apr. 10, 2007) .............................................. 22, 23

*In re Ormat Technologies, Inc.*,
   2011 WL 3841089 (D. Nev. Aug. 29, 2011) ...................................................... 21

*In re Walt Disney Co. Der. Litig.*,
   906 A.2d 27 (Del. 2006) ................................................................................. 16

*In re Westell Techs. Inc.*,
   2001 WL 755134 (Del. Ch. June 28, 2001) ...................................................... 21

*Kamen v. Kemper Financial Services, Inc.*,
   500 U.S. 90 (1991) .................................................................................... 10, 11

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007) ........................................................................... 13

*Kaplan v. Peat, Marwick, Mitchell & Co.*,
   540 A.2d 726 (Del. 1988) ............................................................................... 11

*Kittel v. First Union Mortg. Corp.*,
   303 F.3d 1193 (10th Cir. 2002) ...................................................................... 20

*Landis v. North America Co.*,
   299 U.S. 248 (1936) .................................................................................. 20, 23

*Lewis v. Curtis*,
   671 F.2d 779 (3d Cir. 1982 ............................................................................ 11

*Massey v. Merrill Lynch & Co.*,
   464 F.3d 642 (7th Cir. 2006) ......................................................................... 24

*Oklahoma Dept. of Sec. v. Blair*,
   231 P.3d 645 (Okla. 2010) ............................................................................. 19

*Orman v. Cullman*,
   794 A.2d 5 (Del. Ch. 2002) ........................................................................... 19

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) ............................................................................... 19

*Rattner v. Bidzos*,
   2003 WL 22284323 (Del. Ch. Sept. 30, 2003, revised Oct. 7, 2003) ........... 18

*Rosenblum v. Sharer*,
   2008 U.S. Dist. LEXIS 65353 (C.D. Cal. July 28, 2008) ..................... 21, 23, 24

*Rosenfeld v. Schwitzer Corp.*,
   251 F. Supp. 758 (S.D.N.Y. 1966) ................................................................. 21

*Sanders v. Wang*,
 1999 WL 1044880 (Del. Ch. Nov. 8, 1999) ................................................ 14

*Schnell v. Porta Sys. Corp.*,
 1994 WL 148276 (Del. Ch. Apr. 12, 1994) ................................................ 21

*Shaev* v. *Armstrong*,
 2006 WL 391931 (Del. Ch. Feb. 13, 2006) ................................................ 18

*Smith v. Van Gorkom*,
 488 A.2d 858 (Del. 1985) .......................................................................... 16

*Sousa v. Prosser*,
 2004 WL 1497764 (E.D. La. July 1, 2004) ................................................ 21

*Stone v. Ritter*,
 911 A.2d 362 (Del. 2006) .......................................................... 15, 16, 17

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.*,
 2010 WL 3527596 (W.D. Okla. Sept. 2, 2010) ................................ 1, 10, 19

*White v. Panic*,
 783 A.2d 543 (Del. 2001) .......................................................................... 12

**Statutes**
18 Okla. Stat. Ann. § 1006 .............................................................................. 3

18 Okla. Stat. Ann. § 1006(B)(7) .................................................................. 14

18 Okla. Stat. Ann. § 1031(B) ....................................................................... 15

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 10

Fed. R. Civ. P. 23.1 .................................................................................. 1, 10

Defendants Ken L. Kenworthy, Jr., Michael J. Rohleder, James A. Merrill, Ken L. Kenworthy, Sr., T.J. Boismier, Steven Craig, and Jon W. McHugh (collectively, the "Individual Defendants") hereby move to dismiss Plaintiff Donald Porter's Complaint ("Complaint")[1] (Dckt. No. 1) pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure because the Complaint does not contain particularized allegations demonstrating that demand is excused. Plaintiff, therefore, lacks standing to bring this derivative suit on behalf of GMX Resources, Inc. ("GMX" or the "Company"). Alternatively, the Individual Defendants request that this lawsuit be stayed pending resolution of another lawsuit before this Court—*Northumberland County Retirement System, et. al. v. GMX Resources, Inc., et al.,* Case No. CIV-11-520-D (the "Securities Lawsuit"). This lawsuit is entirely contingent on that fledgling securities lawsuit, and therefore, should be stayed pending resolution of the Securities Lawsuit.

## INTRODUCTION

On October 29, 2009, the Securities and Exchange Commission ("SEC") issued a staff accounting bulletin (Ex. 2)[2] providing revised interpretive guidance on a wide range of oil and gas accounting topics. In response to the SEC's revised guidance and advice received from its new auditor, GMX decided to restate certain of the Company's prior

---

[1] Unless otherwise noted, "¶ ___" refers to paragraphs in the Complaint.

[2] The Court may consider documents and information outside of the pleadings for purposes of ruling on this motion, including "material submitted as an exhibit to or incorporated or referenced in the complaint." *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, No. CIV-09-1114-D, 2010 WL 3527596, at *1 n.4 (W.D. Okla. Sept. 2, 2010) (DeGiusti, J.). The Court may also "take judicial notice of the contents of SEC filings." *Id.* Attached as Ex. 1 is a declaration authenticating the judicially noticeable documents attached as exhibits.

1

financial statements that had been audited by the Company's previous auditors.[3]   On March 16, 2010, GMX filed its 2009 Form 10-K annual report (the "2010 10-K", Ex. 4), which included restated financial statements for year-end December 31, 2008 and for the first three quarters of 2009 (the "Restatement").

One year later, the Securities Lawsuit was filed, alleging that GMX, GMX's CEO and chairman of the board Ken Kenworthy, Jr., and GMX's CFO James Merrill violated Sections 11, 12, and 15 of the Securities Act of 1933 by making false or misleading statements in materials filed with the SEC—namely, the financial statements that were revised in the Restatement.   As explained in the June 20, 2011 Motion to Dismiss the Complaint and Brief in Support of Defendants GMX Resources, Inc., Ken L. Kenworthy, Jr., and James A. Merrill (the "Securities Lawsuit MTD"),[4] which the Individual Defendants incorporate herein by reference, the Securities Lawsuit complaint fails to state a claim as a matter of law.

Despite the Securities Lawsuit's fatal flaws, Plaintiff purports to bring this tag-along lawsuit derivatively on behalf of the Company seeking indemnity from the Individual Defendants for any liability the Company **might** have in the Securities Lawsuit.   *See* ¶¶ 1, 53.   But, Plaintiff's premature tag-along derivative lawsuit also fails as a matter of law because Plaintiff does not establish that he has standing to assert claims derivatively on behalf of GMX.   He failed to make demand on GMX's Board of Directors ("Board"), and he failed to demonstrate that demand would have been futile.

---

[3]  *See* March 12, 2010 Form 8-K attaching March 11, 2010 press release (the "Announcement"), which is attached as Ex. 3.

[4]  Attached as Ex. 5 [Securities Lawsuit Dckt. No. 58].

To establish that he is entitled to bring a lawsuit derivatively on behalf of the Company, Plaintiff must make particularized allegations demonstrating that demand would be futile. In other words, Plaintiff must adequately allege that a majority of the Board lacks the disinterestedness and independence required to consider whether the Company should assert any claims against the Individual Defendants relating to the Restatement or the Securities Lawsuit.

The Complaint fails to meet this standard. It contains only conclusory allegations that the Individual Defendants would not sue themselves, which are insufficient as a matter of law; otherwise the demand requirement would be meaningless. Instead, Plaintiff must plead facts showing a "substantial likelihood" that a majority of the Board members are personally liable to the Company. Plaintiff fails to make that showing, and, therefore, Plaintiff lacks standing to sue on behalf of the Company. *See* Argument § 1, *infra*. Plaintiff cannot state a claim for relief against any of the Individual Defendants. Pursuant to GMX's Articles of Incorporation[5] (Articles Sixth and Seventh) and OKLA. STAT. ANN. tit. 18 § 1006, the Individual Defendants can only be liable to the Company for breaches of the duty of loyalty, intentional wrong doing, or actions taken in bad faith. The Complaint contains no nonconclusory allegations of intentional wrong-doing or bad-faith by any Individual Defendant. Therefore, there is no basis in the Complaint for concluding that the Company has a claim against any of the Individual Defendants. *See* Argument § 2, *infra.*

---

[5] Attached as Ex. 6.

Alternatively, should the Court decide not to dismiss this lawsuit, the Individual Defendants respectfully submit that this case should be stayed until resolution of the Securities Lawsuit because this lawsuit is patently premature.  Plaintiff's claims are expressly grounded on the same allegations that form the basis for the Securities Lawsuit. And, the "damages" Plaintiff seeks to recover on behalf of the Company will arise only if, and to the extent that, GMX and its management are ultimately unsuccessful in defending against the Securities Lawsuit. Moreover, allowing this lawsuit to proceed now could damage the Company, the very entity Plaintiff claims to represent.  If GMX is forced to prosecute this lawsuit now, it risks (1) spending time and money unnecessarily (should the Securities Lawsuit be defeated) or (2) establishing its own liability in the Securities Lawsuit (by establishing here the liability of one of the Individual Defendants that could be imputed to GMX in the Securities Lawsuit).  Accordingly, as a number of courts have recognized in similar circumstances, this tag-along shareholder derivative action should be stayed until liability is adjudicated in the Securities Lawsuit.  *See* Argument § 3, *infra*.

## FACTS AND PROCEDURAL HISTORY

GMX is an independent oil and natural gas exploration and production company headquartered in Oklahoma City.  In 2010, GMX restated certain of its financial statements after its new accountants determined that such action was necessary to bring historical information audited by the Company's prior accountants into compliance with new interpretive accounting guidance issued by the SEC.  That Restatement led to the Securities Lawsuit and this tag-along derivative lawsuit.

### 1.    GMX's March 2010 Accounting Restatement.

"There are two allowable methods of accounting for oil and natural gas business activities: the successful efforts method and the full-cost method." Ex. 4 at 44.  GMX follows the "full-cost method of accounting under which all costs associated with property acquisition, exploration and development activities are capitalized." *Id*.  Full cost accounting requires companies to compare capitalized costs of producing oil and gas properties and related deferred income taxes to the present value (at a 10% annual discount rate) of their proven oil and gas reserves at a gas and oil price specified by the SEC.  When the capitalized costs and related deferred income taxes are greater than the value of the properties at the SEC commodity price (the "ceiling test"), the difference is written off as an expense (an "impairment charge") and may not be reversed in subsequent periods even if higher oil and natural gas prices prevail.  *See* Ex. 4 at F-11.

On October 29, 2009, the SEC issued revised guidance on full cost pool accounting.  *Id*. at F-18; *see also* Ex. 2.  The SEC clarified that a ceiling test must account for taxes on production, even if no taxes will be paid because the company is not generating taxable income.  Ex. 2 at 11.

During an audit of GMX's financial statements for year-end 2009, the Company's new auditor, Grant Thornton, discovered that certain aspects of GMX's full cost accounting did not comport with the SEC's revised guidance.  Ex. 3.  Therefore, GMX decided to restate its financial statements for the year ended December 31, 2008 and the three quarters ended March 31, June 30, and September 30, 2009.  *Id*.  The Restatement relates to:  (1) the method used to record the Company's full cost pool impairment

charges, other impairment charges, and related deferred income taxes in the fourth quarter of 2008 and the first and second quarters of 2009, and (2) the computation of GMX's diluted loss per share for 2008 and the first three quarters of 2009. *Id*. at 2. The changes made related solely to non-cash charges that did not impact the valuation of GMX's principal asset – its oil and gas reserves. *Id*. The Restatement had no impact on GMX's proven reserves or cash flows. Moreover, GMX's stock price fell by 85% prior to the announcement of the Restatement, demonstrating that the Restatement did not cause GMX's stock price to fall.

On March 16, 2010, GMX filed its 2010 10-K, which further stated that the Company had "identified a material weakness in [its] internal control over financial reporting . . . resulting in corrections to our previously reported December 31, 2008 consolidated financial statements and the first three quarters of 2009." Ex. 4 at 50. The 2010 10-K also restated the Company's previously-issued financial statements for the year ended December 31, 2008 and the first three quarters of 2009. *Id*.

The deficiencies in the impairment charge calculations were due to GMX's prior auditors improperly accounting for the effects of deferred income taxes or deferred income tax benefits on the impairment charges. Ex. 3. The existence of the impairment charge calculation errors, however, did not come to GMX's attention until after the SEC issued additional guidance in October 2009 that clarified the proper methodology for calculating such charges and GMX's new auditors brought that new guidance to its attention. *Id*.

## 2.      The Section 11 Securities Lawsuit.

The Restatement led to the Securities Lawsuit, which alleges that GMX, Kenworthy, Jr.,[6] and Merrill, among others, violated Sections 11, 12, and 15 of the Securities Act by making false or misleading statements in materials filed with the SEC. There are no allegations of intentional wrong doing or bad faith conduct.  The claims in the Securities Lawsuit are not claims for fraud; they are essentially strict liability claims relating to misstatements or omissions made in proxy materials for securities offerings.

As is explained in Defendants' Securities Lawsuit MTD, the securities complaint fails to state a claim and should be dismissed.  The Section 11 claims fail for three independent reasons:

- the Securities Lawsuit plaintiffs fail to plead standing to sue because plaintiffs failed to adequately allege that they bought GMX stock in the offerings;

- plaintiffs fail to identify any material, misleading statement in GMX's offering materials; and

- the allegations on the face of the Securities Lawsuit Complaint demonstrate that the alleged misstatements did not cause GMX's stock price to fall.

The Section 12 claims suffer from the same infirmities plus two additional fatal flaws:

- plaintiffs fail to adequately allege that they purchased shares "in or traceable to" the offerings; and

- plaintiffs fail to identify from whom they purchased their stock, and therefore, they have not alleged that any of the Individual Defendants were statutory sellers.

---

[6] Defendant Ken Kenworthy, Jr. is the only GMX director named as a defendant in the Securities Lawsuit.

Finally, the control person claim under Section 15 fails because the Securities Lawsuit plaintiffs have not adequately pled a primary securities-law violation.  These deficiencies require dismissal of the Securities Lawsuit.

### 3.      Plaintiff's Tag-Along Derivative Lawsuit.

While the Complaint is prolix, its allegations can be summarized succinctly: "[D]efendants' actions have exposed the Company to hundreds of millions of dollars in potential liability for violations of the federal law" and damaged GMX's reputation.  ¶ 1, *see also* ¶ 53 (claiming damages for GMX's potential liability in the Securities Lawsuit). This derivative lawsuit, therefore, is expressly predicated on the outcome of the Securities Lawsuit.  Plaintiff also contends that the Individual Defendants breached their fiduciary duties because they caused GMX to issue the financial statements that were later restated and failed to implement a system of internal financial controls that would have prevented the need for the Restatement.  *Id.* ¶¶14-20.  Plaintiff also purports to assert claims for "waste of corporate assets" and unjust enrichment.  *Id.* at 1.

### 4.      GMX's Board of Directors.

As explained in the Complaint, the members of the Board include the Individual Defendants except Merrill (the "Director Defendants"), as well as Michael Cook, Thomas Casso, and J. David Lucke, who are not named as defendants.  ¶ 59.  Plaintiff makes allegations regarding six of the nine Board members, which are summarized below:

| Name | Position | Named As Defendant? | Alleged Basis for Lack of Independence | Claims Asserted as Basis for Lack of Disinterestedness |
|---|---|---|---|---|
| Michael G. Cook | Outside Director | No | None | None |
| Thomas G. Casso | Outside Director | No | None | None |
| J. David Lucke | Outside Director | No | None | None |
| Ken L. Kenworthy, Jr. | CEO and Director | Yes | Son of Kenworthy, Sr | Duty of Care Duty of Loyalty Waste of Assets Unjust Enrichment |
| Michael J. Rohleder | President and Director | Yes | None | Duty of Care Duty of Loyalty Waste of Assets Unjust Enrichment |
| Ken L. Kenworthy, Sr. | Outside Director, | Yes | Father of Kenworthy, Jr. | Duty of Loyalty Waste of Assets Unjust Enrichment |
| T.J. Boismier | Outside Director, Audit Committee | Yes | None | Duty of Loyalty Waste of Assets Unjust Enrichment |
| Steven Craig | Outside Director, Audit Committee | Yes | None | Duty of Loyalty Waste of Assets Unjust Enrichment |
| Jon W. McHugh | Outside Director, Audit Committee | Yes | None | Duty of Loyalty Waste of Assets Unjust Enrichment |

## ARGUMENT

1. **Plaintiff Lacks Standing to Sue on Behalf of the Company Because He Failed To Make Particularized Allegations Demonstrating That Demand Is Excused Under Rule 23.1.**

   a. **A Heightened Pleading Standard Applies to Plaintiff's Demand Futility Claims.**

Before Plaintiff can usurp the Company's right to decide whether it will assert

claims belonging to it, Plaintiff faces a high burden of showing that the Board is unable

to make that determination itself.  "Shareholder derivative suits must satisfy both the general pleading standards of Rule 12(b)(6)[7] and the particular requirements set forth in Rule 23.1."  *Kautz v. Sugarman*, Nos. 10 Civ. 3478(RJS), 10 Civ. 4312(RJS), 2011 WL 1330676, *3 (S.D.N.Y. Mar. 31, 2011) (quoting *Halebian v. Berv,* 590 F.3d 195, 204 (2d Cir. 2009)).  "[D]erivative complaints must 'state with particularity . . .  any effort by the plaintiff to obtain the desired action from the directors . . . and the reasons for not obtaining the action or not making the effort.'"  *Id*. (citing Fed. R. Civ. P. 23.1 (b)(3)) (subsections omitted).  "Thus, a derivative plaintiff must plead demand or demand futility with specific facts and may not simply rely on conclusory allegations."  *Id*.

While Rule 23.1 requires a plaintiff purporting to sue derivatively on behalf of a company to plead demand futility with particularity, the Court must look to Oklahoma law to determine whether Plaintiff is excused from making such a demand or otherwise has standing to sue on behalf of the Company.  *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 100-01 (1991).  Because GMX is an Oklahoma corporation, Oklahoma law applies to Plaintiff's claims.  *Id.* at 98-99.

---

[7] A complaint must be dismissed under Rule 12(b)(6) if it does not contain "enough factual allegations to state a claim to relief that is plausible on its face." *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, No. 09-1114, 2010 WL 3527596, at *2 (W.D. Okla. Sept. 2, 2010) (internal citation and quotations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. at *3 (quoting *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1951 (2009)) (internal quotations and punctuation omitted).  "The Court need not accept as true the assertions in a complaint which 'amount to nothing more than a formulaic recitation of the elements of a claim.'" *Id*. (quoting *Iqbal*, 129 S. Ct. at 1951; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007)) (internal quotation marks omitted).  Such conclusory allegations should be ignored for purposes of determining if a complaint pleads a plausible claim for relief.  *See id*.

Under Oklahoma law, "[o]rdinarily before a court will entertain an action brought by shareholders, the shareholders must first show that they sought relief through corporate channels without success." *Hargrave v. Canadian Valley Electric Co-op, Inc.*, 792 P.2d 50, 54 (Okla. 1990); *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988) ("The right to bring a derivative action does not come into existence until the plaintiff shareholder has made a demand on the corporation to institute such an action or until the shareholder has demonstrated that demand would be futile."). The exception to this rule is when any request for action within the corporation would have been futile. *Hargrave*, 792 P.2d at 54. A demand on a company's directors is futile if a majority of its board "lack[s] 'the requisite disinterestedness to determine fairly whether the corporate claims should be pursued'" or is not independent from interested directors. *Id.* (quoting *Lewis v. Curtis*, 671 F.2d 779, 785 (3d Cir. 1982) (overruled on other grounds by *Kamen*, 500 U.S. at 100-01)).

Because there is relatively little Oklahoma case law on the fiduciary duties of officers and directors of an Oklahoma corporation and the Oklahoma Corporations Act is based on the Delaware Corporations Act, "in the absence of Oklahoma authority [Oklahoma courts] may consult decisions from the courts of Delaware and other jurisdictions concerning derivative actions." *Beard v. Love*, 173 P.3d 796, 802 (Okla. Civ. App. 2007); *see also Hargrave*, 792 P.2d at 54; *Vail v. Jolley*, No. CJ 05-6187, 2010 WL 749066, *1 (Okla. Dist. Ct. Tulsa County Feb. 17, 2010).

Where, as here, a plaintiff initiates a derivative action without making a pre-suit demand on the board, his complaint "must overcome the powerful presumptions of the

business judgment rule" by alleging particularized facts demonstrating that demand is futile because a majority of the board is "incapable of exercising its power and authority. . . ." *White v. Panic*, 783 A.2d 543, 550-51 (Del. 2001) (internal quotation marks and citations omitted).  In this case, where the underlying "subject of the derivative suit is not a business decision of the board," but rather the decision whether to file claims on behalf of the company, demand futility is established only if the complaint contains "particularized factual allegations creat[ing] a reasonable doubt that, as of the time the complaint was filed, [a majority of the members of] the board of directors could have properly exercised [their] independent and disinterested business judgment in responding to a demand." *Braddock v. Zimmerman*, 906 A.2d 776, 784-85 (Del. 2006) (internal quotation marks and citations omitted).

Here, Plaintiff fails to show that a majority of the Board lacks the disinterestedness and independence required to excuse demand.  Therefore, he lacks standing to prosecute claims on the Company's behalf.

> **b.     GMX's Board Is Sufficiently Disinterested to Determine Whether to Assert the Alleged Claims.**

In order to excuse demand based on interestedness, Plaintiff must plead facts establishing a conflict between the directors' interests and those of the company or its shareholders sufficient to "deprive stockholders of a neutral decision-making body." *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1170 (Del. 1995) (internal quotations omitted).   Immaterial or speculative conflicts provide no basis for a claim; rather, a plaintiff must plead facts establishing a conflict of such "a sufficiently material importance, in the context of [each individual] director's economic circumstances, as to

have made it improbable that the director could perform her fiduciary duties without being influenced by her overriding personal interest." *In re Gen. Motors (Hughes) S'holder Litig.*, No. Civ. A. 20269, 2005 WL 1089021, at *8 (Del. Ch. May 4, 2005) (internal quotation marks and citations omitted).

Plaintiff's sole basis for alleging that the six Director Defendants lack disinterestedness is that prosecution of the tag-along claims would force them "to sue themselves" and the Director Defendants face a substantial likelihood of liability for the claims alleged in the Complaint.   ¶¶ 60-67.   These bald assertions are insufficient to excuse demand. *Kanter v. Barella*, 489 F.3d 170, 180 (3d Cir. 2007) ("A plaintiff may not bootstrap allegations of futility merely by alleging that the directors participated in the challenged transaction or that they would be reluctant to sue themselves.") (internal quotation marks and citations omitted).   Rather, a derivative complaint must allege "particularized facts regarding the directors that create a sufficient likelihood of personal liability" for one of the claims asserted against them. *Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003) ("[I]t is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges" liability).   None of Plaintiff's purported causes of action against any of the Director Defendants is sufficient to meet this standard because Plaintiff does not make any particularized allegations that, if true, would establish the personal liability of even one member of the Board, much less the requisite majority.

### i.   Plaintiff Cannot Plead a Claim for Breach of the Duty of Care Because GMX's Articles of Incorporation Waive Such Claims.

Plaintiff asserts that Defendants Merrill, Kenworthy Jr. and Rohleder breached their fiduciary duty of care.  He also alleges against each of the Individual Defendants a claim for "waste of corporate assets," but Oklahoma recognizes no such claim for relief.[8] Thus, Plaintiff's "corporate waste" claim is really just a claim for breach of the duty of care Plaintiff labels "corporate waste" because he cannot, as matter of law, state a duty-of-care claim against GMX's non-executive directors under any circumstances.

Pursuant to OKLA. STAT. ANN. tit. 18 § 1006(B)(7), Oklahoma corporations are permitted to eliminate personal liability for their directors for breach of fiduciary duty so long as they do "not eliminate or limit the liability of a director" for "any breach of the director's duty of loyalty" or "for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law."  Acting under this authority, GMX's Articles of Incorporation (Sixth) provide that "no director of this Corporation shall be liable to this Corporation or its shareholders for monetary damages for breach of fiduciary duty as a director."  Ex. 6.  This provision exculpates all non-executive directors from potential damages liability for a breach of the duty of care and requires

---

[8] Individual Defendants' research has found no Oklahoma decision recognizing such a claim.  Under Delaware law, for a "waste claim to survive a motion to dismiss, the plaintiff must allege facts sufficient to show that the corporation received no consideration for the transferred asset. The standard is stringent and requires that no person of ordinary business judgment would conclude that the deal was fair to the corporation." *Sanders v. Wang*, No. 16640, 1999 WL 1044880, at *10 (Del. Ch. Nov. 8, 1999).  Plaintiff here does not meet that standard.

dismissal of Plaintiff's claims against the Director Defendants. *Stone ex rel. Am. South Bancorporation v. Ritter*, 911 A.2d 362, 367 (Del. 2006); *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 463 (D. Del. 2004) ("properly raising the existence of a valid exculpatory . . . provision in the corporate charter entitles director [defendants] to dismissal of any claims for [monetary] damages against them that are based solely on alleged breaches of the board's duty of care'") (internal quotation marks and citations omitted).

Moreover, Plaintiff's claims against GMX's CEO Kenworthy, Jr., and President Rohleder[9] (the "Executive Defendants") likewise fail as a matter of law because GMX is required to indemnify those defendants against any claims for breach of the duty of care. GMX's Articles of Incorporation provide that the Company "shall indemnify, and may advance litigation expenses to, its officers and directors to the fullest extent permitted by the Oklahoma General Corporation Act." Ex. 6 at Article Seventh. Under Oklahoma law, the Company may indemnify its officers for any liability they owe to the Company or its shareholders so long as they acted "in good faith and in a manner . . . reasonably believed to be in or not opposed to the best interests of the corporation. . . ." OKLA. STAT. ANN. tit. 18 § 1031(B). In other words, the Executive Defendants are entitled to indemnity for claims other than those involving a breach of the duty of loyalty or bad faith, including claims for a breach of the duty of care.

---

[9] Individual Defendant Merrill is also an executive, but claims against him are not relevant to this demand futility analysis because he is not a director.

Even if these exculpatory and indemnification provisions were not in place, Plaintiff's attempt to state a claim for breach of the duty of care would still fail. To sustain a duty of care claim, a derivative plaintiff must provide particularized allegations establishing that the defendant was grossly negligent in undertaking his duties. *Smith v. Van Gorkom*, 488 A.2d 858, 873 (Del. 1985) (superseded by statute on other grounds, as explained by *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001)). The Complaint contains no particularized allegations respecting the conduct of the Individual Defendants, let alone allegations establishing that they were grossly negligent. And, the allegations in the Securities Lawsuit—even if true—would not establish a breach of the duty of care because Sections 11, 12, and 15 of the Securities Act do not require negligence for liability, much less gross negligence.

### ii. Plaintiff Has Not Pled a Breach of the Duty of Loyalty.

To plead a breach of the duty of loyalty where, as here, there are no allegations that any director was self-dealing, the Plaintiff must plead bad-faith conduct. *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 66-67 (Del. 2006). There are three categories of misconduct that may support a claim for a breach of the duty of good faith:[10] "[i] where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, [ii] where the fiduciary acts with the intent to violate applicable positive law, or [iii] where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Id. at* 67.

---

[10] The duty of good faith is one aspect of the duty of loyalty, but for analytical purposes it is sometimes easier to distinguish between the two. *Stone*, 911 A.2d at 370.

Plaintiff makes conclusory allegations that the Individual Defendants breached the duty of loyalty, but he fails to plead any facts that would establish such a breach.

First, Plaintiff states that the Director Defendants "breached their duty of loyalty by knowingly or recklessly making . . . improper statements" regarding the Company's financial statements and internal controls.  ¶ 72.  This is a conclusory allegation of fraud. Plaintiff does not—and cannot in good faith—plead with particularity the circumstances constituting fraud, which is required by Rule 9(b) of the Federal Rules of Civil Procedure.  Instead, he makes only a "formulaic recitation of the elements" that the Court must ignore when determining if the Complaint states a claim.  *United Food*, 2010 WL 3527596, at *3 (quoting *Iqbal*, 129 S. Ct. at 1951; *Twombly*, 550 U.S. at 554-55).

Second, Plaintiff asserts that Defendants Boismier, Craig, and McHugh abdicated their responsibilities as members of the Board's audit committee.  ¶ 74.  "Delaware courts have recognized that "a claim that directors are subject to personal liability for employee failures is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Stone*, 911 A.2d at 372 (internal quotation marks and citations omitted).  A derivative plaintiff must allege particularized facts demonstrating "a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists – [in order to] establish the lack of good faith that is a necessary condition to liability."  *Id.* (internal quotation marks and citations omitted).

Plaintiff does not satisfy this pleading requirement.  Instead, "[w]ith the benefit of hindsight, the plaintiff['s] complaint seeks to equate a bad outcome with bad faith."  *Id.* at

373.  The Complaint only recites the fact that GMX corrected and restated certain of its financial statements when errors were discovered, ignoring that both the original and restated financial statements were audited by independent outside accounting firms. There are no particularized allegations "regarding the Company's internal financial controls," the "actions and practices of [GMX's] audit committee," or any "red flags" that should have indicated to the Board that there was a problem.  *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *12-13 (Del. Ch. Sept. 30, 2003, revised Oct. 7, 2003).  "In the absence of red flags, good faith in the context of oversight must be measured by the directors' actions to assure a reasonable information and reporting system exists and not by second-guessing after the occurrence of employee conduct that results in an unintended adverse outcome."  *Stone*, 911 A.2d at 373 (internal quotation marks and citations omitted).  "[T]he one thing that is emphatically not a [good faith] claim is the bald allegation that directors bear liability where a concededly well-constituted oversight mechanism, having received no specific indications of misconduct, failed to discover fraud."  *David B. Shaev Profit Sharing Account v. Armstrong*, Civ. A. 1449-N, 2006 WL 391931, at *5 (Del. Ch. Feb. 13, 2006).

### iii.   Plaintiff Has Not Pled a Claim for Unjust Enrichment.

In Count III, Plaintiff purports to assert a claim for relief for unjust enrichment, asserting that the "Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to GMX."  ¶ 82.

"Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, *i.e.*, the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Okla. Dep't of Sec. ex rel. Faugt v. Blair*, 231 P.3d 645, 658 (Okla. 2010).   Other than allegations regarding the amount of compensation that some, but not all, of the Individual Defendants received (¶¶ 17-20), there are no allegations in the Complaint regarding the basis for any compensation received or that any of that compensation was wrongfully received.   The Complaint contains only the "formulaic recitation of the elements" that is proscribed by *Twombly* and *Iqbal*.   *United Food*, 2010 WL 3527596, at *3 (quoting *Iqbal*, 129 S. Ct. at 1951; *Twombly*, 550 U.S. at 554-55).   Therefore, Plaintiff has not stated a claim for relief for unjust enrichment.

### c.   GMX's Board Is Sufficiently Independent to Determine Whether to Assert the Alleged Claims.

The Complaint also fails to adequately allege that a majority of GMX's Board lacks independence.   In this context, "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences."   *Orman v. Cullman*, 794 A.2d 5, 24 (Del. Ch. 2002) (quoting *Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984)).   Plaintiff must plead particularized facts establishing a reasonable doubt as to whether a majority of the Board is "sufficiently independent to make an impartial decision despite the fact that they are presumptively disinterested."   *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). Plaintiff fails to satisfy this standard.   The Complaint's only allegations regarding independence are that Ken Kenworthy Sr. and Ken Kenworthy Jr. are father and son, and

therefore, each is not disinterested because the other faces personal liability in this lawsuit. ¶ 65. As noted above, however, Plaintiff has failed to plead that any Individual Defendant faces a substantial likelihood of personal liability. Moreover, even if the allegations of lack of independence were sufficient as to Kenworthy Jr. and Kenworthy Sr., Plaintiff does not allege facts demonstrating that a majority of GMX's Board lacks independence.

### 2. This Lawsuit Is Premature and Should Be Stayed.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A court has broad authority to stay one action in favor of another where doing so will promote judicial economy and may avoid unnecessary litigation and effort by the parties. *Landis*, 299 U.S. at 255; *Kittel v. First Union Mortg. Corp.*, 303 F.3d 1193, 1194-95 (10th Cir. 2002) (exercising its discretion under *Landis* to stay an appeal pending the outcome of related state court proceeding). In this case, all applicable considerations militate in favor of staying this lawsuit until the merits of the Securities Lawsuit are heard and decided by this Court.

A stay will avoid piecemeal litigation of contingent claims that might prove unnecessary if the Company is successful in defending against the Securities Lawsuit. It will also allow the Company to focus on defending against the Securities Lawsuit, avoiding the very harm that Plaintiff seeks redress for and avoiding the conflicts that would arise between the Company's goals in the Securities Lawsuit and this one.

Therefore, as has been done by many other courts in similar circumstances, the Court should stay this lawsuit pending resolution of the Securities Lawsuit:

- *In re Ormat Techs., Inc.*, No. 3:10-cv-00177-ECR-RAM, 2011 WL 3841089 (D. Nev. Aug. 29, 2011) (staying derivative action in favor of federal securities lawsuit);

- *Rosenblum v. Sharer,* CV 07-6140-PSG (PLAX), 2008 U.S. Dist. LEXIS 65353, at *25 (C.D. Cal. July 28, 2008) (finding that "the interests of litigative efficiency and judicial economy weigh heavily in favor of entry of a stay");

- *Sousa, ex rel. Sousa v. Prosser*, No. Civ. A. 03-2942, 2004 WL 1497764, at *4 (E.D. La. July 1, 2004) (staying related action to avoid piecemeal litigation and risk of inconsistent results);

- *Breault v. Folino*, No. SACV010826 GTLANX, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (staying derivative action in favor of securities lawsuit on basis that it was in company's best interest to avoid having its officers and directors defend two actions simultaneously);

- *In re Westell Techs. Inc., Derivative Litig.*, No. Civ. A. 18533, 2001 WL 755134, at *2 (Del. Ch. June 28, 2001) (staying derivative action in favor of federal securities lawsuits);

- *Derdiger v. Tallman*, 773 A.2d 1005, 1016-17 (Del. Ch. 2000) (staying where plaintiffs repackaged previously filed federal securities law claim as a breach of fiduciary duty action);

- *Schnell v. Porta Sys. Corp.*, No. Civ. A. 12,948, 1994 WL 148276, at *4 (Del. Ch. Apr. 12, 1994) (staying derivative action in favor of securities fraud action because, "while the claims in the two courts may be stated in different ways, they are actually the same claims and arise out of the same transactional facts");

- *Rosenfeld v. Schwitzer Corp.*, 251 F. Supp. 758, 763 (S.D.N.Y. 1966) (noting that the potential for duplication is particularly great in shareholder derivative actions).

### a.    This Lawsuit Is Premature and Could Prove Unnecessary.

It is premature to litigate Plaintiff's claims, which amount to claims for indemnification for the Securities Lawsuit. This lawsuit is expressly based on the same allegations as the Securities Lawsuit, and liability here is contingent upon GMX's

purported liability in the Securities Lawsuit.   ¶ 1 ("[D]efendants' actions have exposed the Company to hundreds of millions of dollars in potential liability for violations of the federal law."); *see also* ¶ 53.   It would therefore be premature to litigate this lawsuit before the Securities Lawsuit is adjudicated.   Such a course of action would invite piecemeal and duplicative litigation that may prove wholly unnecessary should GMX prevail in defending against the underlying Securities Lawsuit.

To avoid such problems, in *Brudno v. Wise*, the Delaware Chancery Court held that "'practical considerations' make it unduly complicated, inefficient, and unnecessary for [a similar tag-along derivative] Action to proceed ahead or apace of the Federal Securities Action."   No. Civ. A. 19953, 2003 WL 1874750, at *4 (Del. Ch. Apr. 1, 2003). The court reasoned that, if the Securities Lawsuit was found to be without merit, "it is not apparent what, if anything, would be left of this [derivative] Action."   *Id.*   The court further explained that the tag-along derivative action "cannot rationally proceed to trial in advance of" an adjudication of liability in the securities case, since the tag-along action "is, in reality, a claim primarily for indemnification" for the company's putative securities fraud liabilities, and it would put the cart before the horse to attempt to determine whether the officers and directors were obligated to provide reimbursement for an unadjudicated liability.   *Id*.

Similarly, in *In re Isolagen, Inc. Sec. & Derivative Litig.*, MDL No. 1741, 2007 WL 1101278 (E.D. Pa. Apr. 10, 2007), the court ruled that a derivative suit was premature where the "majority of the damages the Plaintiff is claiming"—such as "costs of internal investigations," "liability for securities fraud," and "damage to its goodwill"—

"are contingent upon the outcome of the related securities class action which is still pending before this Court." *Isolagen*, 2007 WL 1101278, at *2. The court noted that "[d]erivative shareholder suits are consistently foreclosed when they merely allege damages based on the potential costs of investigating, defending, or satisfying a judgment or settlement for what might be unlawful conduct." *Id.* (internal quotation marks and citation omitted); *see also Rosenblum*, 2008 U.S. Dist. LEXIS 65353 at *24-25.

Plaintiff's claims are similarly premature and warrant a stay—if not a dismissal—of this action.

### b.    Staying This Lawsuit Avoids Potential Harm to the Company.

In prosecuting derivative litigation, the best interest of the Company is paramount. This is because "[t]he derivative plaintiff, as a fiduciary to the company, owes a duty of loyalty to the company to act in its best interest." *Breault*, 2002 WL 31974381, at *1. Premature prosecution of this lawsuit could prejudice the Company, in whose name Plaintiff purports to act, and therefore a stay is appropriate. *See, e.g., Landis*, 299 U.S. at 255 (stay granted if clear case of hardship to moving party); *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 216 (1937) (in determining whether to impose a stay, court weighs benefits to and hardships upon the parties).

It is in GMX's interest to have the Company and its officers and directors single-mindedly focus upon the defense of the Securities Lawsuit, thereby potentially avoiding or limiting the very liabilities for which Plaintiff seeks indemnification. That corporate interest would be compromised by forcing GMX and the Individual Defendants to engage in this collateral litigation over whether and which of the Individual Defendants might be

required to provide reimbursement for yet-to-be adjudicated liabilities. *See Breault*, 2002 WL 31974381 at *2 (staying derivative action in favor of securities lawsuit because it was in company's best interest to avoid having its officers and directors defend two actions simultaneously). Furthermore, putting GMX in the position of litigating against the very people who may serve as witnesses on the Company's behalf in the defense of the Securities Lawsuit would threaten to prejudice the Company's ability to mount a vigorous defense. *See id.* Numerous courts have recognized this potential harm to the company and have stayed tag-along derivative suits on this basis:

- *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 647 (7th Cir. 2006) (noting that derivative plaintiff and the corporation "may have different interests and goals in litigation, and the shareholder could act in ways that harm the corporation, even if unintentionally") (internal quotation marks and citation omitted);

- *Rosenblum*, 2008 U.S. Dist. LEXIS 65353, at *24 (accepting defendant's argument that "denying a stay will potentially cause substantial harm to [defendant company]" given that it was "likely that the officers and director Defendants in the derivative action would be important witnesses" and any liability of the officers in the derivative suit could be "imputed to the corporation" in the class-action suit);

- *Cucci v. Edwards*, No. SACV 07-532 PSG (MGLX), 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (granting motion to stay tag-along derivative action pending outcome of related securities class action because the shareholder derivative Plaintiffs would need to prove allegations that would seriously undermine [corporation's] defense of the class action"); and

- *In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 269-70 (S.D.N.Y. 1986) ("a disinterested board might well … conclude" that it is not an "appropriate time to institute litigation" against a company's current or former officers or directors while the company is defending related civil actions).

### c. Staying This Lawsuit Will Not Prejudice the Company or Plaintiff.

A stay of this lawsuit will not prejudice the Company or Plaintiff, who purports to act on behalf of GMX.  GMX will not even potentially incur the vast majority of the purported damages Plaintiff seeks to recover until and if liability is found in the Securities Lawsuit. If GMX successfully defends itself against the Securities Lawsuit such that there is no finding of wrongdoing by anybody associated with the Company, then GMX can consider that information in deciding whether to pursue claims against others.  If, on the other hand, there is an adverse judgment against GMX in the Securities Lawsuit, the Company will be in a better position to evaluate whether, and against whom, to proceed.  *See Brudno*, 2003 WL 1874750, at *4.  Indeed, as explained, staying this lawsuit will benefit GMX and its shareholders—including Plaintiff—by enabling the Company to conserve its resources and focus on the defense of the underlying Securities Lawsuit.  Plaintiff can hardly claim prejudice from a stay after waiting more than a year-and-a-half after the Restatement to file this lawsuit.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for lack of standing pursuant to Rule 23.1. Alternatively, the lawsuit should be stayed pending resolution of the Securities Lawsuit.

DATED:  October 17, 2011.

Respectfully submitted,

s/Mack J. Morgan III
_____
MACK J. MORGAN III, OBA #6397
CROWE & DUNLEVY
A Professional Corporation
20 North Broadway Ave., Suite 1800
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
mack.morgan@crowedunlevy.com

-AND-

KENNETH P. HELD (admitted *pro hac vice*)
RONALD L. ORAN (admitted *pro hac vice*)
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Telephone:  (713) 758-2222
Facsimile:  (713) 615-5219
kheld@velaw.com
roran@velaw.com

**ATTORNEYS FOR DEFENDANTS KEN L.
KENWORTHY, JR., MICHAEL J.
ROHLEDER, JAMES A. MERRILL, KEN L.
KENWORTHY, SR., T.J. BOISMIER,
STEVEN CRAIG, and JON W. MCHUGH**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this, the 17th day of October 2011, a true and correct copy of the foregoing was sent to the following:

Darren B. Derryberry
DERRYBERRY & NAIFEH, LLP-OKC
4800 N. Lincoln Blvd.
Oklahoma City, OK 73105-3300
(405) 528-6569
405-528-6462 (fax)
dderryberry@derryberrylaw.com

Ashley R Palmer
ROBBINS UMEDA, LLP
600 B. Street, Suite 1900
San Diego, CA 62101
619-525-3990
619-525-3991 (fax)
notice@robbinsumeda.com

Kevin A Seely
ROBBINS UMEDA LLP
600 B. Street, Suite 1900
San Diego, CA 62101
619-525-3990
619-525-3991 (fax)
notice@robbinsumeda.com

***Attorneys for Plaintiff Donald Porter***

Warren F Bickford, IV
FELLERS SNIDER BLANKENSHIP
BAILEY & TIPPENS-OKC
100 N. Broadway Ave, Suite 1700
Oklahoma City, OK 73102-8820
405-232-0621
405-232-9659 (fax)
wbickford@fellerssnider.com

John B. Heatly
FELLERS SNIDER BLANKENSHIP
BAILEY & TIPPENS-OKC
100 N. Broadway Ave, Suite 1700
Oklahoma City, OK 73102-8820
405-232-0621
405-232-9659 (fax)
Jheatly@fellerssnider.com

***Attorneys for Nominal Defendant
GMX Resources, Inc***.

s/Mack J. Morgan III
MACK J. MORGAN, III

27